Mr. Justice Scott delivered the opinion of the Court. There can be no doubt but that the “ appeal to the Supreme Court,” in chancery causes provided for in the Constitution, (Art. 6, sec. 6,) and regulated by statute, our (Dig., ch. 28, sec. 134 to 139 inclusive,) is, in its substance and nature, that same process for which the revision of sqch cause, that was then, and is still known in England, as “ appeals” in reference to such causes. And, it is manifest, that our statute, in the provisions cited, designed to provide for two things in reference to them essentially different, and not necessarily connected: 1st. The mode in which they should be taken and brought into this court: 2d. For the suspension of the execution of the decree during their pendency here. To accomplish the first object, section 134, (Dig.,p. 244,) provides, in general terms, for “an appeal to the Supreme Court, during the term at which such decision, order, or decree is made, and that such appeal shall be granted in the same manner as appeals are granted in suits at law.” Thus providing for suitors in equity on equal and parallel means to that previously provided for law suitors, who, before had the additional means of bringing their cases here for revision by writ of error. But as writs of error would not lay for equity suitors, they would have been confined to this single mode, if the Legislature had not, in the next section, {sec. 135,) provided for another independent mode by the special order of this Court, or one of its Judges, at legal discretion, upon inspection of the record, for probable su-pervenient errors, if applied for within twelve months after the final decision, order or decree complained of, the first mode in no way involving such discretion beyond the demand of the statutory pre-requisite. The two modes being clearly cumulative, as we think, and the latter, as reasonably at the option of the party, although he may have previously appealed in the Circuit Court, as a writ of error is at his option in a law case, although he may have before appealed there. (Clay’s ad. v. Notrebe, Ex., 6 Eng. Rep. 631.) And each mode perfect in itself, as a regulation to bring a cause, when pursued, within the possession of this court for adjudication, in no way dependent upon, or connected with the fact, whether or not the execution of the decree was suspended or not suspended. Had the Legislature made no further provisions regulating appeals to this court in chancery causes, and a case had been brought up in either of those modes, and was here pending, and a party had desired to suspend the execution of the decree during the pendency of the appeal here, our courts would have been compelled to look to the English courts of like jurisdiction, for precedents not inconsistent with any thing peculiar in our civil institutions. And when looking in that direction, they would have found, that when like appeals were taken to, and were pending in the House of Lords, (which sits in that country as a court of appeals of the last resort for such cases, as this court does in this State,) that the execution of the decree pending the appeal could be suspended only in one of two ways, that is to say, either by an order of the chancery court from where the cause was brought, or by a special order of the House of Lords, where it was pending. And that the application was never granted by either court, unless in cases where equity did not demand such a condition, until the sum recovered was first placed! in a state of security: and that this was usually done by requiring the amount of money to be brought into the chancery court, to be there laid out under the direction and control of that court, for the benefit of the party who should be ultimately entitled to it, (per Kent, Chancellor, in Messonier v. Kauman, 3 John. Ch. R. p. 67, 68.) And this incidental power, exerted upon this foundation, when traced to its source, would be found among the necessary inherent powers of each court, because the power to do justice in a case necessarily included the power to prevent injustice, else, pending a litigation in chancery, a party might, in the face of the court, remove the subject from its jurisdiction, and thus render the proceedings but a solemn mockery. And the power to reverse a decree, and thereby destroy it, which is greater, does, in the nature of things, as a general principle, include the power to suspend the operation, which is less. And accordingly, Chancellor Kent, when speaking of the power of the Chancery Court of New York, in the case of Bradwell v. Weeks, (1 John. Ch. R. at p. 327,) says: “There must then, as I had occasion lately to consider in the case of Green v. Winter, (ib. 77,) be a power and discretion in the Chancellor, as there is in error in a court of law, (Entwhistle v. Shepherd, 2 T. R. 78. Kempland v. McCauley, 4 Term R. 436.) to determine, in the first instance, upon the operation of the appeal, and to what extent, and upon what points, it shall stay proceedings.” And in the same case, when speaking of the powers of the court for the correction of errors, in New York, says: “It has always been supposed that it had authority as a necessary incident to its jurisdiction, to render its practice conformable to the House of Lords in England, when sitting as a court of appeals, and such was the declared sense of that court, by its 6th rule, of February, 1786.” And in the case of Messonier v. Kauman, before cited, after again alluding to the undoubted power in the courts of law to “ determine in their discretion, when a writ of error was a supersedeas,” as a matter “well understood and established,” he shows, by citing 15 Vesey 184, that it was the practice of the House of Lords to' stay proceedings pending on appeal there from chancery, “by special order of that house.” The conclusion, therefore, is a safe one, that the power of this court, when sitting as a court of errors, to make an order allowing a writ of error to stay the execution at law; and the like power to make an order to suspend the execution of a decree, when sitting as a court of appeals in a chancery cause, is, in its essence and nature, an inherent power, necessarily incident to its jurisdiction over the causes respectively. But by the constitution, the appellate power of this court, whether exerted upon law or equity causes, may be regulated in its operation in such manner as may be, from time to time prescribed by law. And as to law causes, the legislature have so regulated this incidental power as to inhibit this court from making any order allowing a writ of error to stay proceedings at law for execution, except in certain specified cases, unless a recognizance, as pointed out by the statute, shall be first entered into. (Dig. ch. 127, sec, 16.) Thus legislating, as to this, as to any case that can come here by writ of error. And law causes brought up by appeal stand upon the same footing. And in all such cases, although this court, in making orders to stay proceedings, acts in accordance with the statute regulations, still,-the power it exerts is its own inherent power, although its exercise is thus regulated by the statute as contemplated by the constitution. And, but for these regulations of the statute, this court would have been authorized, and would doubtless have exercised their powers of this class, in accordance with English precedents. Then, by a parity of reasoning, there can be no doubt but that we have the power to grant the application before us; but the question to be determined is, whether or not the regulation prescribed by the legislature relating to the stay of proceedings, in chancery cases pending appeals here, is sufficiently broad to include this cause. If they are sufficiently comprehensive, we must grant or refuse it in pursuance of these regulations; if they are not, we must grant or refuse it in conformity to English precedents, as a case without the statute, and not inhibited by it. And placing this question upon its broadest and strongest ground against this application, and assuming that the legislature intended to embrace every case where a- stay of proceedings could be applied for, and to inhibit all cases that they did not provide for, and then interpret this statute according to its letter, and without any reference to its spirit or mischief and the remedy, and nevertheless, a stay of proceedings in a case at bar, is not necessarily withheld. And this will appear by an examination of the provisions of the two sections of the statute (secs. 136, 137.) The first provides that “the appeal” (except in specified cases,) “ shall not operate so as to stay the proceedings, unless a recognizance be entered into before the Supreme Court or Circuit Court, or a judge thereof, and filed in the office of the Clerk of the Circuit Court.” This would seem inevitably to give authority to those courts and judges to take recognizances gene-: rally, of the kind and description specifically pointed out in the next section, to have the legal operation provided for them. And it will be perceived that this section does not provide that these recognizances shall be entered into before the courts and judges ffinly who grant the appeals, nor does the next section make any such provision, and the only thing that squints that way, is that the “sufficiency” of the “sureties” shall be approved by the court or judge granting the appeal. Now the legal validity of a recognizance, like any other bond, in no way depends upon either the solvency of the principle or of his securh ties, or of the approval of their sufficiency: although the approval of the sufficiency of the sureties may be a prerequisite to their statutory operation in staying the proceedings. And this will appear when we consider that a recognizance can be valid as such, without any reference to the solvency of the recognizors, or of any approval of their sufficiency, because “ a recognizance is an obligation of record, which a man enters into before some court of record, or magistrate duly authorized, with condition to do some particular act. It is, in most respects, like another bond, the difference being chiefly this, that the bond is the creation of a fresh debt or obligation de novo; and the recognizance is the acknowledgment of a former debt upon record,” (Black. Com.,) and, consequently, whether the recognizors be solvent or insolvent, and whether their sufficiency be approved or not, the recognizance may be valid, provided the court, before which it was entered into, had authority, And, this being so,it might still be valid, although for want of approval by the court or judge who granted the appeal,” it might not operate to stay the proceedings; and no one can doubt but that it was in the power of the legislature to have provided that the recognizance of appeal in these cases might be taken before one court or judge, and the sufficiency of the sureties be approved by another; although all should be done before it should have the legal operation designed. And if we are to interpret this statute according to its letter, and without reference to its spirit and the rhischief and the remedy, this interpretation will make it as consistent with itself, as any other. And especially would we give it this construction rather than declare it void upon the ground, that under the pretence of regulating one of the inherent powers of this court incident to its jurisdiction, of a case regularly brought within the action of its appellate power, it, in effect, attempted to destroy this incidental power. But we think it clear, that any such narrow and literal interpretation of this statute, would be totally unauthorized, when it is remembered that it is essentially of that class of statutes known as remedial. And it cannot be doubted but that it is properly so; its whole scope being “ to supply the defects and abridge the superfluities of the old law.” And the long established rule as to such statutes is, that they “are to be construed liberally;” and that “ there are three points to be considered in the construction of remedial statutes; the old law, the mischief and the remedy; that is, how the old law stood at the making of the act; the mischief was what the old law did not provide; and the remedy the parliament hath provided to cure this mischief.” (Black. Com.) “And it is the business of the judges so to construe the act as to suppress the mischief and advance the remedy.” (1 Mon. R. 208. 4 Bac. Abr. 650. 3 Rand. R. 522.) “ And cases are sometimes considered as embraced by the equity of the statute which are within the mischief, though not within the letter.” Bac. Abr. 649. 1 Mon. R. 208. “ On this principle, the letter of the act is sometimes restrained and sometimes enlarged;” (4 Bac. Abr. 650.,) “and they should be compared with other laws that are made by'the same legislature that have affinity with the subject,” (4 Bac. Abr. 645’) “and sometimes, the construction made is con-1 trary to the letter,” (Dicarris 718,) “and hence courts, whenever they discover a thing within the mischief, which it was the intention of the legislature to remedy, hold that such things must be considered within the statute.” Smith's Com. on St. Const. p. 816, sec. 701. And when we regard it in this light of being purely a remedial law, and apply these various rules of interpretation, we find not only abundant reason but ample authority to hold that a case situated like that at bar, is as fully within the reason and equity of the statute as to the security of the sum involved by recognizance, to be taken and approved here, as if the legislature had enacted in express terms that, whenever an appeal should be pending here, brought up in either of the two modes provided by the statute, this court should not make any special order allowing'such an appeal to operate as a stay of proceedings, unless a recognizance be first entered into here, such as is provided for the stay of further proceedings in other chancery causes, where appeals may be granted by this court or one of its judges, the sufficiency of the securities to be approved here, and the recognizance to be sent down to the Circuit Court as in such other cases. There can be no reason to suppose that the framers of the constitution contemplated any less facilities for equity than for law suitors: or that the legislature could have desired to discriminate onerously against them. And we have seen that so far as law suiioi’s are concerned, it did not destroy (or attempt to do so) the incidental power of this court to suspend proceedings in the court below, pending a writ of error, or an appeal at law here; but simply regulated that incidental power by providing that it should not be exercised unless the opposite party was first secured by a recognizance. And in chancery causes, the same sort of process is provided — that is to say, recognizance, for the security of the opposite party as a condition precedent for the stay of proceedings in this class of causes. Thus substituting this process for'that which was used in England of requiring the money to be brought into the chancery court. And it is impossible to devine any reason why the legislature could have desired that, when an appeal had been regularly brought here in cither of the two modes provided, and was here pending, that the undoubted incidental power of this court to suspend the proceedings, should be exercised under the onerous English rule of requiring the money to be brought into the chancery court at the same time that they had by regulation allowed the substitute for this by recognizance in the other class of cases where the appeal had been granted by the Circuit Court when it had been granted by this court or one of its judges. So far from the legislature having shown any disposition to cripple or impair in any way the facilities of suitors either at law or equity, to obtain a stay of proceedings pending cases in this court, the very reverse is manifested in every act on this subject. Not'only are equity suitors facilitatad in the allowance of recognizance in lieu of bringing the money into the chancery court, but suitors of both classes have been secured the privilege by this process, if they avail themselves of it with an appeal in the Circuit Court, at the proper time of securing a stay of proceedings, without any appeal to the discretion of the court beyond the fixed statutory pre-requisites. Upon what ground then, can it be supposed that the legislature could have suddenly changed the policy to discriminate against only such equity suitors as had brought their cases here by the legitimate mode of an appeal from the Circuit Court without recognizance; and to this end had either cut them off entirely from a stay of proceedings, or had left such cases to be governed by the English usage ? The first would be but a futile effort, under the garb of regulation, to take from this court one of its powers derived under the constitution, necessarily incident to its appellate jurisdiction over the case. The other would be in the face of the spirit and policy of every ’ statutory regulation touching supersedeas or stay of proceedings either at law or equity. We cannot, therefore, think that either was the will or intention of the legislature upon so slim a basis as that which assumes that the general words “unless a recognizance be entered into before the Supreme Court or Circuit Court, or a Judge thereof,” contained in the 136th section of the statute, must be restrained by the prticular words in the succeeding section “with one or more sufficient sureties to be approved by the court or Judge granting the appeal.” Such an interpretation of the legislative will would be enjoined perhaps in a criminal or penal statute and authorized in a statue taking away common rights'; but surely it would be a violation of all sound rules to interpret, in this stick-to-the-bark manner a statute purely remedial — and designed to advance the right of the citizen to resort to the courts of justice for the .redress of grievances. . - Holding then that we have a right by special order to stay the proceedings below in the case at bar during its pendency here, and that by a fair and sound interpi’etation of the statute we have authority to take and approve a recognizance just as we would if we had granted the appeal under the statute; and finding, upon an inspection of the record, sufficient ground, we shall grant the motion on the statutory terms, and overrule so much of the case of Bently v. Fowler & Blackburn, as conflicts with these views of the law.