[No. 3614.  Decided December 12, 1900.]

MARY A. GAFFNEY, *Respondent,* v. JOHN MEGRATH *et al., Appellants.*

GARNISHMENT—PETITION TO QUASH—RIGHT TO JURY TRIAL.

Where a writ of garnishment has been issued upon a judgment, the filing of a complaint in intervention by the judgment debtor, which is equivalent to a petition to the court to recall and quash the writ of garnishment, raises a question for the court, and not for a jury, to determine whether sufficient grounds exist for the exercise of such a power.

ATTORNEY AND CLIENT—RATIFICATION OF UNAUTHORIZED ACTS—
    SATISFACTION OF JUDGMENT.

Although the action of an attorney in recalling a writ of execution upon a judgment, and in accepting a quantity of brick to be applied in satisfaction thereof, in case judgment on appeal should be sustained against the judgment debtor, may have been in excess of his authority, yet the action of his client, who, with full knowledge of all the facts, subsequently sues him for the value of the brick, amounts to a ratification of his action and constitutes a satisfaction of the judgment to the extent of the value of the brick.

INCONSISTENT REMEDIES—ELECTION.

The election of a client to sue her attorney to recover from him the value of a quantity of brick he had taken in satisfaction

of a judgment obtained for her, in which action she recovered judgment against her attorney, precludes her from pursuing a further remedy by garnishment upon her original judgment.

Appeal from Superior Court, King County.—Hon. E. D. BENSON, Judge. Reversed.

*Preston, Carr & Gilman,* for appellants.

*Brady & Gay,* for respondent.

The opinion of the court was delivered by

WHITE, J.—On August 19, 1899, the plaintiff, Mary A. Gaffney, filed in the superior court of the state of Washington for King county her garnishment affidavit, in which she alleged, in substance, that the defendants John Megrath and John McGough, and each of them, were indebted to her upon a judgment rendered against them and each of them, in said court, for $861.29, with interest at eight per cent. from April 1, 1894, and costs amounting to $35, and supreme court costs amounting to $41.50, which judgment was wholly unsatisfied; and that the Standard Furniture Company, a corporation, was indebted to the defendant John Megrath in a sum exceeding the amount of said judgment. Upon the filing of a proper bond a writ of garnishment was issued, directed to the Standard Furniture Company. This writ was properly served upon the garnishee. The answer of the garnishee raised no issues which need to be considered upon this appeal. The defendant John McGough made no appearance whatever in the garnishment proceedings. The defendant John Megrath appeared in the garnishment proceedings and filed therein a pleading denominated a "complaint in intervention," in which, for the purpose of resisting the plaintiff's claim in the garnishment proceedings, and of demanding relief adverse to the plaintiff, he set up, in substance, that after the rendition and entry

of the judgment referred to in the plaintiff's affidavit for garnishment, and before the issuing of the writ of garnishment, the said judgment was fully paid and satisfied, including all costs and interest, according to the terms of the judgment; and that, although the said judgment was fully paid and satisfied, the same was never at any time satisfied upon the records of the court, and that the records of the court did not show the payments made thereon. The said pleading further charged that, after the said judgment had been fully paid, the said plaintiff wrongfully sued out the garnishment and caused the same to be served upon the garnishee, and that there was no sum or sums whatever then due from the said defendant to the plaintiff on account of or by reason of the rendition and entry of the said judgment. In said pleading the defendant prayed that the writ of garnishment be dismissed, and that the garnishee be released from all liability by reason of the issuance and service thereof. To this pleading the plaintiff interposed a motion, by which she asked the court to require the defendant John Megrath to make the second paragraph of said pleading more definite and certain in this: "that he be required to state the time, place and manner of the alleged payment of the said judgment." Upon the hearing of this motion the court ordered the defendant Megrath to make his pleading more definite and certain in the particular demanded by. the plaintiff; and thereafter, in compliance with the order of the court, said defendant filed an amended pleading designated as his "amended complaint in intervention." In this amended pleading the defendant Megrath alleged that, after the entry of the original judgment in the superior court of King county, Washington, in the action in which Mary A. Gaffney was plaintiff and John Megrath and John McGough were defendants, and before

the determination of the appeal taken by the defendants, from said judgment to the supreme court of the state, the plaintiff caused a writ of execution to issue on said judgment against the property of the defendants, and caused the same to be duly levied by the sheriff of King county on the 29th day of May, 1894, upon 460,000 bricks, the property of the defendant John Megrath, and the said bricks were of the value of $2,000, upon which bricks there was a valid mortgage of $436.32; that said bricks were by the sheriff advertised for sale, and the date of said sale fixed for the 30th day of June, 1894; that on the 30th day of June, 1894, the date fixed for said sale, said John Megrath was prosecuting an appeal to the supreme court of the state from said judgment, and that on said day, for the purpose of avoiding the necessity of making and filing a stay bond or supersedeas bond pending the determination of said appeal, and at the same time giving the plaintiff security for the payment of her judgment equally as good as a stay bond or supersedeas bond, and for the purpose of enabling sales to be made of the said bricks without loss to the said Megrath in respect to the value thereof, and without endangering the security which the plaintiff had by virtue of the levy of the said execution upon said bricks, the said Megrath entered into an agreement with Richard Saxe Jones, who was then the attorney of record of the plaintiff in said action of Mary A. Gaffney v. John Megrath and John Mc-Gough, as follows: It was agreed that said Megrath should make, execute, and deliver to the said Jones, as the attorney of the said plaintiff, and in trust for the benefit of the said plaintiff and the said Megrath, a bill of sale of said bricks; and that the title to the said bricks, until the same were sold, should remain in the said Jones as trustee; and that the said bricks should remain where

they then were, on the land of said Megrath; and that sales of the said bricks should be made by the said R. S. Jones and said Megrath, and that all proceeds of the sales of said bricks should be paid to the said Jones and by him received in trust; and that the proceeds of such sales should be by the said Jones applied, first, toward the payment and satisfaction of the said mortgage on said bricks, which mortgage the said Jones claimed to have purchased on the said day; and that the balance of the proceeds of the sales of said bricks should be deposited by the said Jones in a depository to be agreed upon between himself and the said Megrath, and there held until the final determination of the appeal of said action; and that, in case the said judgment should be affirmed by the supreme court, or the said plaintiff should obtain any final judgment in said action against the said John Megrath, then the proceeds of the sale of said brick, over and above the amount required to discharge said mortgage, should be applied to the satisfaction of such judgment; and that any balance of said proceeds, after the payment of said mortgage and said judgment, should be paid to the said Megrath; and that upon the execution of the said bill of sale and of a written agreement of the tenor above stated, the execution issued upon said judgment should be recalled, and the levy made thereon released; and that pending the final determination of said action no execution should be issued on said judgment, but that the said bill of sale, under the said agreement, should have all the force and effect of a stay or supersedeas bond. It was further alleged by the said Megrath that at the time of making this agreement he had implicit confidence in the honesty and integrity of the said Richard Saxe Jones, and by reason of his said confidence intrusted the preparation of all of the writings necessary to carry

said agreement into effect to the said Jones; that in pursuance to said agreement the said Jones prepared a bill of sale from said Megrath to himself of the said bricks, which said Megrath duly executed and acknowledged, and thereupon the said Jones, as the attorney for the plaintiff, recalled the said execution and procured the release of the said levy; that at the same time the said Jones prepared a written instrument, which he informed Megrath truly recited the terms of the said agreement regarding the selling of said bricks, and the disposition of the proceeds arising from sales thereof, and that Megrath, relying implicitly upon the honor, honesty, and integrity of the said Jones, and believing his representations as to the contents of said written agreement, signed the same without making or causing to be made an examination as to its contents; that the said Jones fraudulently, and for the purpose of cheating and defrauding Megrath, prepared the instrument in the manner shown by the full copy of said agreement set out in the said pleading. The particular in which it is charged in the amended pleading that the written instrument, after reciting the execution of the bill of sale from Megrath to Jones of the bricks, and the conditions under which the bricks should remain and under which sales could be made by Jones and Megrath and after providing for the payment of the mortgage from the proceeds of sales, provides as follows:

"And, second, that the said brick and the balance of the said sum so derived from the said brick shall be subject to the payment of the judgment in favor of the said Mary A. Gaffney, so far as the same may apply, and that the said last mentioned sum (if any such there shall be) shall be held in such depository until the time for the appeal from such judgment shall have expired, in case no appeal is taken; or until the final decision of such appeal, should one be taken, in the supreme court of the state

31—23 WASH.

of Washington, and if on such appeal the said judgment shall be reversed, the said money so on deposit shall be the property of the said John Megrath; but if said appeal shall not be taken, or shall in any way be dismissed, or if on such appeal the said supreme court shall find that the said Mary A. Gaffney is entitled to judgment against the said John Megrath for as much or more than the said sum so on deposit, then the said sum shall be the property of the said Jones."

It is further alleged in said amended pleading that Megrath did not discover the fraud and deceit which had been practiced upon him by said Jones until after all of the bricks had been sold, and that after the making of the agreement, and before Megrath discovered the fraud and deceit which had been practiced upon him, the said Jones sold a portion of said bricks, for which he received the sum of $1,030, and that Megrath sold a portion of said bricks for the sum of $275, which was paid to said Jones, and that Jones, without the knowledge or consent of Megrath, converted to his own use the remainder of said bricks, which remainder were of the value of $700; that after the sale and conversion by Jones of all the bricks Megrath demanded an accounting of him in regard to the bricks and the proceeds thereof, and demanded that Jones apply a sufficient amount of the proceeds of the sales of said bricks to the payment and satisfaction of the Gaffney judgment, and that he pay to him the balance of the proceeds and value of said brick remaining after the payment and discharge of said mortgage and said judgment, which demands Jones refused, claiming that the agreement between him and Megrath was as stated in the last clause of the written instrument, and that all of the proceeds of the sales of said bricks, including the value of the bricks converted by Jones to his own use, were the sole property of him, the said Jones, individually, and not in

trust ·for the purposes contemplated by the agreement between him and Megrath.

It is further charged that thereafter the dispute be· tween Megrath and Jones regarding the said brick and the proceeds thereof was submitted to arbitration, and the arbitration between them, as Knights Templar belonging to Seattle Commandery No. 2, upon the following questions:

"Who owns the said brick, John Megrath or R. S. Jones? And, if the said arbitrators shall decide that the said R. S. Jones is the owner of said brick, what is he to do with the money arising from said brick under the contract?"

And further showing an award upon said agreement as follows: ·

"First. That the brick in controversy, or the proceeds thereof, are the property of R. S. Jones. Second. That the value of said brick was $1,526.25; the amount of money advanced by R. S. Jones, with interest one year, was $540.64; amount of money or value of brick Jones had use of about one year, $985.61, with interest, $1,085.61. Third. Whereas, both the parties are Knights Templar and Masons in good standing, and considering that Masonic charity should ever be exercised and maintained between members of the order; that it is better to make a sacrifice than to stand for the strict letter; and whereas, strong differences have arisen between these two men as to the meaning and effect of certain instruments in writing which they signed, affecting the brick in controversy, that the value of the brick or the proceeds thereof should be disposed of as follows: (A) R. S. Jones to reimburse himself for money advanced to the amount of $540.64, and satisfy the chattel mortgage which he purchased. (B) Also satisfy Mrs. Gaffney's judgment against John Megrath."

It is then further alleged in the said amended pleading that the plaintiff, Mary A. Gaffney, had full knowledge and

notice of the agreement between Megrath and Jones regarding said bricks, and the application of the proceds of the sales thereof, and had full knowledge of the dispute which arose between Megrath and Jones regarding the true meaning of said agreement, and had full knowledge and notice of said arbitration and the said award; and that the said plaintiff, having such full knowledge and notice regarding all of said matters, adopted, ratified, and confirmed the acts of the said Jones, and ratified and confirmed the making of the said agreement regarding the holding and sale of the said bricks and the application of the proceeds and value thereof, as the truth of the said agreement was established by the award of said arbitrators; that the said Jones failed and refused to comply · with the terms of said agreement, and failed and refused to perform the award made by said arbitrators; that, after the making of the said agreement, and after the award made by the said arbitrators, the said plaintiff, Mary A. Gaffney, brought an action in the superior court of King county against the said Jones for the purpose of recovering the amount which was then claimed to be due and unpaid upon her said judgment against Megrath, to-wit, $896.29, with interest thereon at the rate of eight per cent. per annum from the 26th day of May, 1894, which amount the said plaintiff claimed and alleged in her said complaint against the said Jones that the said Jones had obtained and received from Megrath in payment of said judgment, under and by virtue of the agreement between Jones and Megrath (which has been above referred to), which agreement the said plaintiff, in her complaint in said action, claimed and alleged had been made by the said Jones as her attorney and for her benefit; that the said Jones answered the said complaint, denying liability to the said plaintiff, and that, upon a trial of the said action

of Mary A. Gaffney v. Richard Saxe Jones, judgment was rendered in the said superior court in favor of Mrs. Gaffney and against Jones for the amount then found by the jury to be due and unpaid on said judgment, to-wit, the sum of $829.28; that the said Jones prosecuted an appeal from said judgment to the supreme court of the state, and that upon a hearing of the said appeal the judgment was in all respects affirmed.

Upon the facts above recited, it was alleged by the said Megrath in his amended pleading that the judgment in favor of the plaintiff and against him and his co-defendant, James McGough, was fully paid and satisfied, including all costs and interest, according to the terms of said judgment, but that the same had not been satisfied upon the records of the court, and that the said records did not show the payments made thereon; and the said Megrath prayed that the writ of garnishment be dismissed, and that the garnishee be released from all liability thereon.

To this amended pleading the plaintiff filed a motion asking the court to strike certain portions thereof, which motion was denied; and thereupon the plaintiff filed a general demurrer to the said amended pleading, which demurrer was by the court overruled. Thereafter the plaintiff answered this amended pleading, denying that the plaintiff's judgment against Megrath and McGough was wholly unpaid. Megrath filed a reply to this answer, denying the affirmative allegations regarding the judgment. Upon the trial the defendant Megrath and the garnishee demanded that a jury trial be had of the issues between the defendant Megrath and the plaintiff, which demand was opposed by the plaintiff. The demand for a jury trial was refused by the court, and thereupon the court, over the exception and against the protest of Megrath and the garnishee, proceeded to hear and determine

said issues without a jury. After the trial of the action, and before any findings of fact and conclusions of law had been made or signed, the defendant Megrath and the garnishee presented to the court certain proposed findings of fact following the allegations of the defendant Megrath's amended pleading above referred to, and conclusions of law resulting from said facts, and requested the court to make and sign the same, which request was refused as to each and every of the said findings of fact and conclusions of law. Thereupon the court made and entered written findings of fact and conclusions of law to the effect that on the 10th day of May, 1895, the plaintiff obtained judgment in said court against the defendants, John Megrath and John McGough, and each of them, for the sum of $861.29, with interest and costs, and that no part of said judgment had been paid except the sum of $492, which was obtained by the plaintiff's attorney, Richard Saxe Jones, as the net proceeds of certain brick turned over by the said Megrath to the said Jones, and that there was then due and unpaid on the said judgment the sum of $568.83, and that the garnishee was indebted to Megrath in a sum in excess of that amount; and as a conclusion of law that the plaintiff was entitled to judgment against the garnishee for the sum of $568.83. Thereafter, within the time limited by law, the defendant Megrath and the garnishee filed their written exceptions, whereby they duly excepted to the making of each of the findings of fact made by the court, and to the making of the conclusion of law made by the court, and wherein they duly excepted to the refusal of the court to make each of the findings of fact and conclusions of law requested by them. Thereafter, within the time limited by law, the garnishee and the defendant Megrath duly moved for a new trial, which motion was by the court denied, to which

denial due exception was taken and allowed. Thereafter the court signed a judgment entry containing findings to the effect that there was due and unpaid on the plaintiff's judgment the sum of $568.83, and that the garnishee was indebted to Megrath at the time of serving and filing its answer to the writ of garnishment in a sum in excess of this amount, and adjudging that the plaintiff, Mary A. Gaffney, have and recover from the garnishee the sum of $568.83, with interest and costs. From this judgment the defendant Megrath and the garnishee, the Standard Furniture Company, a corporation, have appealed.

The first error assigned is that the court erred in denying the demand of the defendant Megrath and the garnishee for trial by jury of the issues of fact made between the defendant Megrath and the plaintiff. The pleading called "amended complaint in intervention" is, in effect, a petition to the court setting forth facts which, if true, would not only authorize, but require, the court to recall and quash the writ of garnishment. The writ of garnishment is in aid of the writ of execution. It is well settled that it is a ground for quashing an execution that, before it was issued, the judgment which is relied upon as authority for its issuance had been paid. The supreme court of Illinois, in *Sandburg v. Papineau,* 81 Ill. 446, says:

"There is no principle of law better recognized than that which gives to courts of record power over the process of their courts. It is essential to the administration of justice, and it by no means depends upon statutory enactment, but the power is coeval with the common law courts; and such courts will recall their process and quash the same, when it is shown that it would be illegal or inequitable to permit its further use, and to allow it to be enforced. If a judgment were satisfied, and, through mistake or by design, an execution were to issue upon it, does

any one suppose the court from which it issued is power-
less to recall and quash it ?"

The judgment debtor, upon the issuance of either a
writ of execution or a writ of garnishment upon a judg-
ment that has been satisfied, has a right to petition the
court to recall the writ, and it is the duty of the court on
such petition to inquire into the facts set forth, and to
render judgment thereon as the rights of the case demand.
*Harkins v. Clemens*, 1 Port. 30; *Anthony v. Shannon*, 8
Ark. 52; *Harper v. Graham*, 20 Ohio, 106; *Walrath v.
Walrath*, 27 Kan. 395; *Sandburg v. Papineau, supra*.
Regarding the so-called amended complaint in interven-
tion as a petition to the court to recall and quash the writ
of garnishment, we think it was for the court, and not for
a jury, to determine whether there existed sufficient
grounds, legal or equitable, for the exercise of this power;
and hence no error was committed by the court in refus-
ing a jury trial.

The second assignment of error is that the court erred
in finding that there was due upon the judgment rendered
in favor of Mary A. Gaffney against John Megrath and
James McGough the sum of $568.83, and erred in find-
ing that there was any sum whatever due on said judg-
ment.    The evidence in this case shows that as early as
February, 1896, Mrs. Gaffney knew of the contract be-
tween Jones and Megrath and the decision of the arbi-
trators set out in the petition.    After trying to get Jones
to pay to her the amount of her judgment against Megrath
and McGough, and failing therein, on or about the 30th
of June, 1896, she commenced an action in the superior
court of King county, by Allen & Powell, as her attorneys,
alleging, in substance, her employment of Mr. Jones as
her attorney in her suit against Megrath and McGough,
the recovery of a judgment for $1,161.29 and costs on the

26th of May, 1894, in that suit; the issuing of a writ of execution on that judgment at the instance of Jones, and the levy of the same on May 29, 1894, upon 460,000 brick, the property of Megrath, which she alleges were of the value of $2,000; that said brick were advertised by the sheriff for sale on her execution; that, prior to the time of sale, Jones, as her attorney, but without her knowledge or consent, directed the sheriff to release the brick from the levy of the writ, and that the sheriff did so and returned said writ unsatisfied; that Jones, without her knowledge or consent, entered into an agreement with Megrath whereby Megrath, under a bill of sale, delivered the brick to Jones, and as a part of the same transaction made the agreement which is set out in the petition herein. She further alleges that Jones took possession of the brick without her knowledge or consent; that said brick were of the reasonable value of $2,000; that he sold a part for $1,030; that a part were sold by Megrath for $275, and the money turned over to Jones, and that the remainder of the brick, of the value of $700, were used by Jones in improving his own property. She further alleged that Megrath and McGough prosecuted an appeal on the original judgment, and that it was modified by the supreme court so that the final judgment was for $861.29 and costs. She further alleged that she had demanded of Jones that he pay her the value of the brick, that he apply the proceeds derived from the sale of brick upon her judgment, and that he pay to her the amount of the judgment and costs, with interest at eight per cent. per annum from the date of the judgment. And she prayed judgment against Jones for the amount of the Megrath-McGough judgment, with interest at eight per cent. per annum from date thereof. Jones denied that he had entered into the agreement with Megrath as attorney

for Mrs. Gaffney, but alleged it was solely for himself; and he further alleged that the agreement did not properly and truly express the agreement made between Megrath and Jones. He further alleged that Mrs. Gaffney had no interest in the agreement. He admitted that there were 407,000 brick, but no more, and he denied that they were worth any more than $1,000. He denied the sale of the brick for the sums alleged by the plaintiff, and he denied any improvement to his own property by the use of the brick. He claimed that the writ of execution was released at Mrs. Gaffney's request. It is not necessary to set out any more of the answer. A trial was had in the superior court in the case, which resulted in a verdict and judgment in favor of Mrs. Gaffney against Jones for $829.28. An appeal was taken to this court (*Gaffney v. Jones*, 18 Wash 311, 51 Pac. 461), and the judgment was affirmed.

Megrath at all times claimed that the transfer of the brick to Jones was to secure the payment of the Gaffney judgment against him and McGough, in case the supreme court affirmed the same. When Mrs. Gaffney was fully informed of the entire transaction, she assumed the same position taken by Megrath, and brought the suit referred to against Jones to recover not only the money realized by Jones in the sale of a part of the brick, but the value of the remainder of the brick, which she alleged went to improve the property of Mr. Jones. The mortgage on the brick, which was prior to the lien of the execution of Mrs. Gaffney, was for $437.32, and Jones had paid sheriff costs and other costs on the execution, amounting to something like $60; making in all about $500.

In the case of *Gaffney v. Jones, supra,* the court charged the jury as follows:

"If you believe from a preponderance of the evidence in this case that the defendant, Jones, has taken, sold, or

otherwise disposed of any or all of the brick described in the pleadings, and that the value of such brick, if any, at the time they were acquired by the defendant, exceeds the sum of $500.20, then you will find a verdict for the plaintiff against the defendant for the amount of such excess; provided, however, that you will not find for the plaintiff in a sum greater than $896.29, with interest thereon at eight per cent. per annum from May 26, 1894, to this time. Should you find, from a preponderance of the evidence in this cause, that there was no such excess, you will find a verdict for the defendant."

The court, in delivering its opinion, speaking of the bill of sale and agreement set out in the petition, says:

"It is true that in this bill of sale, or agreement, or whatever it may be called, between the appellant and Megrath, it is stated that under certain conditions the proceeds of the brick are to be applied upon the judgment of Mrs. Gaffney, and if this plan had been carried out, and the appellant had received the brick for the respondent's use and benefit, and sold them as her agent or trustee, then an accounting would be required, and he would be responsible only for what he received for the brick. But the whole record shows that the appellant treated these brick after he bought them of Megrath as his own, and that he eliminated the respondent's interest from them entirely. In fact, he frankly testifies that he did not consider that Mrs. Gaffney had any interest in the deal, and that the purchase of the brick was his deal. This being admitted, and it being true, as we think, that the respondent was deprived of the right she had in the brick by the action of the appellant, there was nothing left for the jury to determine but the amount of damages under the instruction of the court."

After Jones came into possession of the brick, he disavowed his agency. The disavowal made him none the less an agent under the agreement. His principal treated this disavowal and the subsequent sale of the brick on his own behalf as a wrongful conversion of the brick by Jones,

and she then sued him for their value to the extent of her demand against Megrath, and thereby made the agent's acts in entering into the agreement her own acts. Mrs. Gaffney is certainly estopped by her suit against Jones from denying that Jones received the brick in her interest, for her benefit, and as her agent. She claimed in that suit that whatever Jones did about the brick he did as her attorney, but without her knowledge or consent. Section 4766, Bal. Code, reads as follows:

"An attorney and counselor has authority,—

1. To bind his client in any of the proceedings in an action or special proceeding by his agreement duly made, or entered upon the minutes of the court; but the court shall disregard all agreements and stipulations in relation to the conduct of or any of the proceedings in an action or special proceeding, unless such agreement or stipulation be made in open court, or in presence of the clerk, and entered in the minutes by him, or signed by the party against whom the same is alleged, or his attorney;

2. To receive money claimed by his client in an action or special proceeding during the pendency thereof, or after judgment upon the payment thereof, and not otherwise, to discharge the same or acknowledge satisfaction of the judgment;

3. This section shall not prevent a party employing a new attorney or from issuing an execution upon a judgment, or from taking other proceedings prescribed by statute for its enforcement."

Counsel for respondent claims that under this section Jones had no authority to receive the brick in payment of the judgment of Mrs. Gaffney against Megrath and McGough. There is no doubt that Mrs. Gaffney herself could have entered into the arrangement that Jones entered into with Megrath. And while it may be conceded that under the limited power given to an attorney by the statute, he could not make such an agreement *so as to bind*

*his client,* yet, if he did make such an agreement and it
was afterwards ratified by his client, it would be as bind-
ing on the client as if made by the client in the first in-
stance. By ratifying the unauthorized act, the principal
assumes and adopts it as his own. This adoption extends
to the whole of the act; it goes back to its inception, and
continues to its legitimate end. The ratification operates
upon the act ratified precisely as though the authority
to do the act had been previously given.

"The principal cannot avail himself of the benefit of
the act and repudiate its obligations. Having with full
knowledge of all the material facts ratified, either ex-
pressly or impliedly, the act assumed to be done in his
behalf, he thenceforward stands responsible for the whole
of it to the full extent to which the agent assumed to act,
and he must abide by it whether the act be a contract or
a tort, and whether it results to his advantage or detri-
ment." Mechem, Agency, § 167.

"The methods by which a ratification may ·be effected
are as numerous and as various as the complex dealings of
human life." Mechem, Agency, § 147.

When the principal knowingly accepts of security taken
by an agent in pursuance of an arrangement made with
the debtor, the arrangement so made will be deemed to be
ratified. *Keeler v. Salisbury,* 33 N. Y. 648.

In the case at bar the principal treated the bill of sale
and agreement between Megrath and Jones as transferring
the brick to her agent for her benefit, and, the agent hav-
ing failed to account to her for them, she sued him for
their value to the extent of her interest in them, and this
was a *prima facie* ratification of the acts of the agent in
receiving them from Megrath under the agreement here-
tofore referred to. Where an agent without authority
had consigned his principal's goods for sale, and the prin-
cipal brought an action against the agent for the price and

value of the goods so consigned, it was held to be a *prima facie* ratification of the consignment. *Frank v. Jenkins,* 22 Ohio St. 597.

Megrath at all times claimed that the delivery of the brick to Jones was for Mrs. Gaffney's benefit in case her judgment against him and McGough was affirmed. Mrs. Gaffney knew this before she brought suit against Jones. Had she declined to ratify the agreement, Megrath would have been at once in a position to have brought suit against Jones for the value of the brick. By her suit against Jones she made her election, and justice requires that she should adhere to it. It is a well settled rule of law that where there exists an election between inconsistent remedies, a party is confined to the remedy which he first adopts. *Rodermund v. Clark,* 46 N. Y. 354; *Morris v. Rexford,* 18 N. Y. 552; *Brown v. Littlefield,* 11 Wend. 467; *Moller v. Tuska,* 87 N. Y. 166; *Hanly v. Kelly,* 62 Cal. 155; *Hanchett v. Riverdale Distillery Co.* 15 Ill. App. 57.

In *Rodermund v. Clark, supra,* the defendant, Clark, who was the sole owner of a sloop, sold an undivided one-half of her to Ward, and agreed to put him in possession of the vessel in the spring of 1863, and afterwards delivered possession of the sloop to Ward as part owner and as captain, and Ward had possession of her from that time until the winter of 1865-66, and navigated her for the joint benefit of himself and Clark. During the winter of 1865-66 the vessel was laid up. On the 10th of February, Clark having previously advertised her for sale, sold the entire vessel at public auction. Ward forbade the sale of his half. At the time of the sale the sloop could not be removed, being inclosed in the ice. She remained there until the opening of navigation, when Ward commenced to run her again. After making two trips with

her, the purchasers at the sale commenced an action
against him to recover possession of the sloop, and she
was seized by the sheriff.   Ward gave a counter-bond,
and she was re-delivered to him.  So far as the records of
the custom house showed, the title to the entire vessel was
in Clark.   Afterwards the purchaser libeled the sloop as
owner in the United States district court, claiming her
under his purchase from Clark, and she was seized by the
marshal and taken from Ward.   The purchaser obtained
a judgment in that proceeding by default, and the marshal
delivered the sloop to him. . The default was afterwards
opened, but the purchaser retained the sloop, and she
never came back to the possession of either Ward or the
plaintiff.   Ward gave the plaintiff an assignment of all
his interest in the vessel, and of all causes of action
against Clark for selling the sloop, and the plaintiff sued
Clark to recover damages for the conversion of Ward's
half interest in the sloop.   The court says:

"When, then, the defendant afterward sold the whole
of the sloop to Malcolm, ignoring the rights in her of
Ward, his act authorized Ward to sue for a conversion of
the property,    *    *    *    and this although the sloop was
not put beyond the   reach of Ward.    *    *    *    Ward
then had two courses, either of which he might pursue.
He could sue the defendant for the conversion, or he could
assert his right of possession, by keeping a permanent
possession, or regaining possession if it was interrupted.
The effectual taking of either of these two courses pre-
cluded   him   from   taking   the   other.    *    *    *    Ward
had taken his position.   He had chosen to assert, and to
act upon the assertion, that the defendant had no right to
sell the whole of the sloop, and that his attempt to do so
had not divested, and should not divest, the interest of
Ward in her.   In our judgment he had then gone so far
as that he could not afterward entirely change his posi-
tion, and that neither he nor the plaintiff, his assignee,
recognizing the act of the defendant as having worked the

destruction of his half of the sloop, could yield to the claim of Malcolm, asserted in the action in the United States court, submit to the seizure in the behalf of Malcolm of the vessel in that action, and then have a right of action against the defendant for the conversion. The mode Ward had first chosen had, until then, been effectual to preserve to him his property and the possession of it. And when that was interfered with by Malcolm, in his suit in the United States court, it was the duty of Ward and the plaintiff not to abandon the property, but to persist in a defense of his right. Where there exists an election between inconsistent remedies, the party is confined to the remedy which he first prefers and adopts. The remedies are not concurrent, and the choice between them being once made, the right to follow the other is forever gone. * * * Any decisive act of the party, with knowledge of his rights and of the fact, determines his election in the case of conflicting and inconsistent remedies."

*Morris v. Rexford, supra,* was an action of assumpsit for goods sold and delivered. It was shown that after the sale and delivery of the goods the plaintiff had brought two actions of replevin for the recovery of their possession for failure to pay the purchase price. Held, a disaffirmance of the sale, and evidence in bar of a subsequent action for the purchase money. The court says:

"The law tolerates no such absurdity as a seizure of goods by a person claiming that he has never sold them, and an action by the same person, founded on the sale and delivery of the same goods, for the recovery of the price. In peculiar circumstances a party may take either one of these courses, but having rightfully made his choice, the right to follow the other is extinct and gone."

It might well be said in the case at bar, that the law would tolerate no such absurdity as the recovery of a judgment by Mrs. Gaffney against her attorney, Jones, upon the claim that Jones, as her attorney, had received

from Megrath, her judgment debtor, payment of her
judgment, and the subsequent enforcement by her of her
judgment against Megrath upon the claim that the trans-
actions between Megrath and Jones were unauthorized
in law or in fact.

In *Hanly v. Kelly, supra,* it appeared that in a former
action between the plaintiff and the defendant, James
Kelly, the plaintiff had alleged the deposit with Kelly, in
trust, of the sum of $600, to be returned upon demand,
and that demand had been made and refused. In that
action he recovered judgment against Kelly for the sum
of $600, with interest and costs. In this action he pleaded
this judgment and its non-payment, and averred that the
said sum of $600 of trust money had been invested by
Kelly in part payment of a lot of land on which he had
afterwards filed a declaration of homestead. He asked
that a trust be established in his favor for an interest in
the land equal to the proportion which the $600 bore to
the whole purchase price. The trial court sustained de-
murrers to the complaint, and the appellate court said:

"The demurrer to the third amended complaint was
properly sustained. * * * For aught that appears,
the investment was made with full knowledge on the part
of plaintiff before the action was brought to recover the
amount deposited, with interest, which resulted in the
judgment at law, and facts are alleged showing that plain-
tiff had complete information with respect to the amount
and condition of the trust fund. Under such circum-
stances, plaintiff must be held to have elected his remedy
at law, and to be estopped from pursuing in equity the
fund into the homestead."

In *Hanchett v. Riverdale Distillery Co., supra,* it
is said:

"Where one purchases goods upon false representations
as to his financial ability, and the vendor, in reliance upon

32—23 WASH.

such representations, makes a sale, such a sale is voidable at the option of the vendor, and he may either rescind the contract and sue to recover back the goods, or he may sue for the purchase money according to the contract of purchase. But a suit brought by the vendor against the vendee for the price of the goods with knowledge of the fraud by which the sale was effected, affirms the sale, and he cannot thereafter rescind the same. The election to rescind or not rescind being once made, is final and conclusive."

Where two inconsistent remedies are open, an election to pursue one estops a party from thereafter pursuing the other. *Button v. Trader,* 75 Mich. 295 (42 N. W. 834); *Connihan v. Thompson,* 111 Mass. 270; *Washburn v. Great Western Ins. Co.,* 114 Mass. 175; *Black v. Miller,* 75 Mich. 323 (42 N. W. 837); *Thomas v. Joslyn,* 36 Minn. 1 (29 N. W. 344, 1 Am. St. Rep. 624); *Steinbach v. Relief Fire Ins. Co.,* 77 N. Y. 498 (33 Am. Rep. 655); *Seanor v. McLaughlin,* 165 Pa. St. 150 (30 Atl. 717, 32 L. R. A. 467); *Rogers v. Green,* 35 Tex. 730; *Arbuckle v. Hawks,* 20 Vt. 538.

In *Steinbach v. Relief Fire Ins. Co., supra,* the plaintiff had brought an action in the state of Maryland upon a policy of fire insurance, which action had been removed to the United States circuit court, in which court he was defeated, upon the ground that there had been a breach of a condition of the policy prohibiting the keeping of fireworks. Afterwards he brought this action in the New York court, asking a reformation of the policy by inserting therein a permission to keep fireworks, on the ground that said permission was omitted from the policy by mistake, and to recover upon the policy as thus reformed. The court said:

"* * * the plaintiff having elected to sue upon the contract as it was, and been defeated, is bound by that

election, and cannot now maintain this action to reform the contract."

The institution of a suit is such a decisive act as to determine an election. *Connihan v. Thompson,* 111 Mass. 270; *Butler v. Hildreth,* 5 Metc. 49; *Kimball v. Cunningham,* 4 Mass. 502 (3 Am. Dec. 230); *Washburn v. Great Western Ins. Co.,* 114 Mass. 175; *Thompson v. Howard,* 31 Mich. 309; *Kenyon v. Woodruff,* 33 Mich. 310.

Conceding that the acts of Jones were wholly unauthorized, the plaintiff ratified them by bringing her action against him. *Knowlton v. School City of Logansport,* 75 Ind. 103; *Kyser v. Wells,* 60 Ind. 261; *Eadie v. Ashbaugh,* 44 Iowa, 519; *First Parish in Sutton v. Cole,* 3 Pick. 232; *Meyer v. Morgan,* 24 Am. Rep. 617; *Walker v. Mobile & Ohio R. R. Co.,* 34 Miss. 245; *Bank of Augusta v. Conrey,* 28 Miss. 667; *Corser v. Paul,* 77 Am. Dec. 753; *Benson v. Liggett,* 78 Ind. 452.

In *Knowlton v. School City of Logansport, supra,* it was decided in the action for conversion that plaintiff, by suing, ratified the defendant's act in making collection of money for plaintiff. Why is it not equally clear that in suing Jones for the value of the brick Mrs. Gaffney ratified his action in receiving them from Megrath to the extent of making his act in taking them and agreeing to account for the proceeds of their sales her act, thus making her answerable to Megrath for the value of the brick by reason of Jones' breach of trust, which trust she had elected to declare was assumed by him for her benefit?

As to the value of the brick received by Jones under the agreement: The quantity was about 407,000. In the suit of *Gaffney v. Jones, supra,* the jury found, in effect, that the value of the brick was $829.28 in excess of $500.20. That would make the value, according to the

verdict of the jury under the instructions of the court, $1,329.48. But it must be remembered that Megrath was not a party to that action, and it is open for him in this proceeding to prove the value of the brick. His evidence is all there is in the case as to *value*, unless the testimony of Mr. Jones as to what he sold the brick for may be considered in that connection. Mr. Megrath puts the value of the brick at $1,723.50. Mr. Jones says he sold the brick for $1,000 to Mrs. Judd, a client of his, because he was in need of money; but he shows that he received in cash for Mrs. Judd from others to whom he sold for her about $1,132.50, and in addition to that, 124,700 of the brick went into Mrs. Judd's house at Ballard. The evidence shows that these brick were worth from $4 to $4.50 per M. at the least. Taking the testimony all together, it is clear to us that the brick, when delivered to Jones, were worth more than enough to pay the mortgage on them, the costs assumed by Mr. Jones, and the judgment of Gaffney against Megrath and McGough, as finally determined by this court. That being the case, from our view of the law as herein expressed, the respondent's judgment against Megrath and McGough has been fully satisfied. The writ of garnishment against the Standard Furniture Company on that judgment was improvidently issued. The judgment of the court below against the Standard Furniture Company and in favor of the respondent is therefore reversed. It is further ordered that said writ of garnishment be quashed and set aside and that the appellants recover their costs herein.

DUNBAR, C. J., and FULLERTON, REAVIS and ANDERS, JJ., concur.